## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW SMITH, )<br>)<br>      Plaintiff, )<br>)<br>v. )<br>)<br>WASTE MANAGEMENT OF ILLINOIS, )<br>INC., TONY CURREN, and KEVIN )<br>NORVILLE, )<br>)<br>      Defendants. ) | Case No. 05-1284 |

### O R D E R

This matter is now before the Court on the Motion for Summary Judgment by Defendants Waste Management, Tony Curren ("Curren"), and Kevin Norville ("Norville"). For the reasons set forth below, the Motion for Summary Judgment [#36] is GRANTED IN PART and DENIED IN PART .

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the allegations present federal questions under Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 626 *et seq.*

### BACKGROUND

Plaintiff, Andrew Smith ("Smith"), is a white male and was born on July 31, 1955. He was hired by Waste Management (or its predecessor) as a waste truck driver and has been in the same division since 1977. Smith started as a rolloff driver before becoming a commercial front end loader driver in 1992.

Smith was a member of the Teamsters Union, Local 627 throughout his employment with Waste Management. As union members, all of the drivers at Waste Management

were subject to the provisions of a Collective Bargaining Agreement ("CBA"). The CBA in effect from May 20, 2000, to May 20, 2004, provided for disciplinary procedures relating to driver accidents, including the rule that accidents would "fall off" a driver's record after nine months and that a driver was subject to discharge after two chargeable accidents within a nine month period. On May 20, 2004, a new CBA went into effect through May 20, 2007. This CBA distinguished chargeable accidents involving vehicle operation from all other violations for purposes of imposing discipline. Discipline for an accident is determined on a case by case basis depending on the facts uncovered by the route manager's investigation and the conclusion as to the root cause of the accident. Smith contends that the CBA was not enforced as written and that discipline was not objectively determined.

Defendant Curren, an African American, became Smith's direct supervisor in February 2004. Curren was a route manager at Waste Management's East Peoria facility from early 2002 until 2006. Mike Kennerley ("Kennerley") was another route manager for the Peoria Division from July 10, 1998, until February 25, 2004. Larry Stuart ("Stuart") was employed by Waste Management for 35 years, including serving as a route manager at the East Peoria facility from 1998 to 2007. These route managers reported to Norville, the District Manager, who then reported to the Area Manager, Steve Fredash ("Fredash"). Non-termination disciplinary decisions were ultimately made by Norville, with input from the driver's route manager, while termination decisions also involved Fredash.

Between February 20 and July 17, 2001, Smith had four accidents within five months but there are no records indicating that he was disciplined for any of them. On March 4, 2003, he received a written warning from Kennerley for an incident in which Smith was backing out of a driveway and hit another vehicle; Smith admits his responsibility for this

accident but believes that he was unfairly disciplined. On March 21, 2003, Smith had another accident when he attempted to move a waste container and caused damage by hitting a gas meter. Kennerley suspended him for one day as a result of this accident. Smith grieved his suspension, but the grievance was denied. On April 7, 2003, Smith had another accident when the turnbuck of his truck caught the hood of another vehicle while he was backing away from a container. Kennerley suspended him for three days as a result of this accident, and he did not grieve this suspension. On July 7, 2003, Smith had his fourth accident in a little over four months when he caught an overhead wire while lifting a waste container over the cab of his truck. Following this accident, Fredash and Norville made the decision to terminate Smith's employment, and Smith was advised of this decision by Kennerley.

On July 16, 2003, Smith grieved his termination. After meeting with the union, Norville informed Fredash that Smith had some personal issues and that given the time Smith had with Waste Management, he should be given another chance. Fredash directed Norville to discuss the situation with Tom Danko ("Danko"), the Safety Director. Fredash, Norville, and Danko discussed the situation and agreed to give Smith an additional chance. On August 8, 2003, Smith and Waste Management entered into a last chance agreement (the "Agreement"). The Agreement indicated that although Waste Management had a right to terminate him based on his accidents, he would be placed on an unpaid suspension from July 16, 2003, through August 10, 2003. The Agreement further provided that if Smith received any further discipline during the 12-months that the Agreement was in effect, he had the right to contest the event which precipitated the imposition of the discipline but could not contest the severity of the penalty imposed therefore.

On May 3, 2004, Smith had another accident when he sideswiped the end of a sign with the top rear left hand corner of his vehicle. Curren was his supervisor at the time of this accident, so Curren investigated and filled out the paperwork regarding the accident. As a result of this accident, Smith was terminated under the Agreement. The decision to terminate his employment was made by Norville and Fredash with input from Curren. Smith grieved his termination, but was told by the union's president that he probably would not be getting his job back and that he should look for another job. Although he contends that other employees should have been placed on last chance agreements, Smith admits that there was no other employee who was on a last change agreement, violated it, and was not terminated.

On August 30, 2004, Smith filed his Charge of Discrimination with the EEOC claiming only age discrimination. On September 17, 2004, he amended his charge to claim race discrimination in addition to age discrimination. Smith was subsequently issued a Right to Sue letter.

On September 26, 2005, Smith filed this action alleging that he was the victim of racial and age discrimination in violation of Title VII and the ADEA. Defendants have now moved for summary judgment. The matter is fully briefed and this Order follows.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of

a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

I. Statute of Limitations

Defendants argue that Smith's claims are barred by the statute of limitations, as he had to file a charge with the EEOC "within 300 days after the alleged unlawful practice occurred." Smith filed his charge alleging age discrimination on August 30, 2004, and amended his charge to include race discrimination on September 17, 2004. Defendants contend that his claims of discrimination with respect to the March 2003 and July 2003 accidents are outside this 300-day window. Defendants also point to an admission by

Smith that as early as June 2003, he believed that he was a target of discrimination but did not take action because of his "ignorance to the law, not knowing what to do." Accordingly, Defendants maintain that only the May 2004 accident and subsequent termination fall within the limitations period.

Smith responds that this action is also brought pursuant to § 1981 and that all acts of alleged discrimination are timely under the four-year statute of limitations for actions under § 1981 and that the May 2004 accident and termination would still be timely even under Title VII and the ADEA's 300-day period. The Court agrees.

Although Title VII and § 1981 have the same liability standards, the remedies are not identical. Walker v. Abbott Lab., 340 F.3d 471, 474 (7th Cir. 2003). Unlike a Title VII claim, a § 1981 claim does not require a filing of an EEOC charge prior to bringing an action in federal court. Id. Additionally, § 1981 claims are subject to a four-year statute of limitations. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 381-82, 124 S. Ct. 1836 (2004). Given the longer statute of limitations, the 2003-04 disciplinary actions are timely and actionable under the statute of limitations for § 1981 claims. However, as each disciplinary incident constitutes a discrete employment action, all but the May 2004 accident and subsequent termination are time barred under Title VII and the ADEA.[1]

---

[1] While this determination essentially has no effect on Smith's racial discrimination claim, since the evidence will still come in on his race claim under § 1981, it will essentially be dispositive of his claim under the ADEA under the circumstances of this case.

II.        Race Discrimination

Title 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Because § 1981 and Title VII have the same liability standards, this claim is analyzed under a Title VII framework. See Walker, 340 F.3d at 474. Under that standard, the plaintiff must establish that he was the victim of intentional discrimination. Mojica v. Gannett Co., 7 F.3d 552, 561 (7th Cir. 1993). The plaintiff may either present direct proof of discrimination or may rely on indirect evidence using the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting method of proof. Id.; Atanus v. Perry, ___ F.3d ___, 2008 WL 696908, at *5 (7th Cir. March 17, 2008). Smith presents facts that he contends would allow him to proceed under both the direct and indirect methods of proof.

        A.        Direct Method

In his Response to the Motion for Summary Judgment, Smith argues that he was disciplined more severely than African American employees as a result of Waste Management's fear of being accused of racial discrimination. Despite misleading nomenclature suggesting that a plaintiff proceeding under the direct method must product direct evidence, such a plaintiff may rely on either direct or circumstantial evidence. Id.; Logan v. Kautex Textron N. Am., 269 F.3d 635, 638-39 (7th Cir. 2001). "The focus of the direct method of proof thus is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action." Atanus, 2008 WL 696908, at *6.

Direct evidence "is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption."  Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 720 (7th Cir. 2005).  This "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003).  As in most cases of alleged discrimination, Smith is not able to present evidence of a "smoking gun" or other direct admission of racial animus.

Circumstantial evidence under the direct method allows the trier of fact "to infer intentional discrimination by the decisionmaker" and "suggests discrimination albeit through a longer chain of inferences."  Rudin, 420 F.3d at 720; Atanus, 2008 WL 696908, at *6. The Seventh Circuit recognizes three types of circumstantial evidence of intentional discrimination:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. . . .  Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment. . . . [T]hird is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief . . . .

Rudin, 420 F.3d at 720-21, *quoting* Troupe v. May Dep't Stores, 20 F.3d 734, 736 (7th Cir. 1994).

Here, Smith points to certain statements in the record by Waste Management supervisors.  In 2001, Kennerley told drivers that Waste Management had a large judgment

entered against it in a race discrimination case in California and that they were not going to let that happen here. Where an African American employee was not performing her job appropriately, her supervisor, Deborah Metroff, recommended termination and was told by management that they had to be very careful with what they did because they did not want the employee filing a race discrimination lawsuit against the company. Metroff gathered information and built a case for this employee's termination, but the employee was not fired or disciplined. Stuart explained the lack of disciplinary action with respect to this employee by saying, "If we fire her, we will have a lawsuit." When Kennerley was asked why an African American employee was allowed an extended probationary period and additional training, he responded that "times are changing." When asked if this meant that it was because the driver was African American, Kennerly just smiled. Metroff received a complaint concerning a claim by a white driver that he had received disparate discipline based on race. She agreed with the complaint and forwarded it to Norville. The discipline was not rescinded, and she was told to stop sending drivers' complaints to the corporate office.

Neither Kennerley nor Stuart was the ultimate decisionmaker in terms of discipline, and it is the motivation of the decisionmaker that matters in the Title VII and § 1981 context. Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003). That being said, when construed in the light most favorable to Smith, these statements by Kennerley and Stuart could be construed as an admission of a corporate culture at Waste Management that operated from the top down and had an effect on Smith's discipline, particularly as Norville concedes that Smith would not have been terminated if he had not been disciplined for any of one of the four accidents in 2003. A reasonable interpretation of these comments is that

the decisionmakers and management at Waste Management were predisposed to treat African American employees more favorably because they were afraid of being sued and instructed the supervisors accordingly. Rudin, 420 F.3d at 723. As such, the remarks are arguably related to the employment actions in question in this case.

Smith next asserts that the record is replete with instances of similarly situated African American employees receiving more favorable treatment in that they were not disciplined for the same kind of accidents for which he received discipline. John Bailey hit a car after running a stop sign and tore down wires twice but was not disciplined. Scottie Gaston and Owen Harris both hit several objects and tore down wires but were not disciplined. James Ingram damaged two walls and ripped fuel lines out of the truck but was not disciplined. A truck driven by Ted Williams pulled down wire, damaged a church, and caused a collision with another vehicle, but he was not disciplined. Robert Wright damaged gates and hit a parked car but was not disciplined.

Furthermore, Smith was initially terminated for having four accidents within a nine month period before his termination, but his termination was converted into an unpaid suspension and he was reinstated under the Agreement. By contrast, he points to Scottie Gaston, an African American driver, who had four accidents within a nine month period in 2002-03 and four accidents in 2004-05 but was never terminated or subjected to a last chance agreement in order to be reinstated.

Defendants argue that Smith admittedly had four accidents within a four month period from March 2003 to July 2003 and that the practice at the facility was for a driver to be subject to termination after four chargeable accidents within a nine month period. However, Waste Management had no set criteria for what constitutes a chargeable offense,

and the record would support the reasonable inference that Defendants' policies and practices shifted depending on the race of the driver.  There is evidence from which a jury could reasonably conclude that although Smith did have the accidents identified, the accidents did not justify the discipline imposed against him, as African American drivers who committed the same or worse offenses either received no discipline or a lower level of discipline than Smith.

Smith has provided evidence regarding other instances in which African American drivers were given preferential treatment.  If a driver completed his route early, he was supposed to check in with the route supervisor and assist in completing unfinished open routes before going home.  White drivers will testify that they were regularly required to assist in completing these open routes while African American drivers routinely refused to work open routes.  The record indicates that an African American driver refused to work open routes, saying in the presence of Stuart "There ain't anything you can do to me.  I've been black too long."  When a white driver complained and mimicked "Larry, you can't do anything to me.  I have been white too long," the white driver received a written disciplinary warning while the African American driver received no discipline.  Another white driver who complained to Stuart and said that he would not help out on open routes since the African American drivers didn't have to was told that if he did not do that work, he would be fired. Kurt McBeath, a route supervisor, received several complaints that an African American driver parked his truck outside his house for extended periods of time during work hours, and McBeath personally verified the accuracy of the complaints.  He reported this to Norville, who said that he would take care of it, but the driver was not disciplined and

continued to leave his route and go home during working hours. By contrast, a white driver was disciplined for taking an extra 15 minutes on his lunch hour.

Smith was a waste truck driver. The same disciplinary rules and CBA apply to all waste truck drivers, and during the time in question, Norville (after receiving input from Kennerley, Stuart, and Curren) was the final decisionmaker on disciplinary issues not resulting in termination. There is also evidence in the record that could promote the reasonable inference that Norville was effectively the substantive decisionmaker with respect to terminations, as Fredash relied on Norville's recommendation and never reversed him.

Smith has identified a number of waste truck drivers who had accidents that appear to be similar to or more serious than the incidents deemed "chargeable" in his case yet received no discipline. Defendants attempt to offer explanations as to why these drivers are distinguishable, but given the context of the entire record in this case, resolution of this issue requires findings of fact and assessments of credibility that cannot be properly made on summary judgment. Specifically, Defendants argue that none of the drivers identified by Smith had four chargeable vehicular accidents within a nine month period. That being said, the determination of what was "chargeable" appears to have involved a subjective analysis conducted by Defendants rather than an objectively verifiable criteria.

Defendants further contend that certain identified instances of purportedly disparate treatment occurred in 2001 and 2002, when safety was not a significant focus at Waste Management. However, Smith has introduced evidence that could promote the reasonable inference that despite Waste Management's claims to the contrary, there was effectively no change in its safety policies or expectations during the relevant times in this case.

When considered in the context of the totality of the record and viewed in the light most favorable to Smith, the Court finds that he has marginally demonstrated a mosaic of circumstantial evidence from which an inference of discriminatory intent might reasonably be drawn. Such evidence is sufficient to create a triable issue as to whether Defendants' discipline and termination of Smith were impermissibly motivated by racial discrimination or disparate treatment based on race. After careful consideration of the record before the Court and having drawn all inferences in favor of the non-moving party, the Court finds that genuine issues of material fact require resolution at trial. Without passing judgment on whether Smith will be able to persuade the jury of the ultimate fact of discrimination at trial, the Court finds that summary judgment must be denied on Smith's racial discrimination claim.

B.   Indirect Method

Although it is probable that the same result would be compelled under the indirect, burden shifting method given the record in this case, the Court need not address this analysis as the conclusion that Smith has met his burden under the direct method is enough to allow him to proceed to trial on his race claim.

III.   Age Discrimination

The ADEA provides that it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Analysis under the ADEA follows the same structural format as Title VII and § 1981, and the plaintiff may proceed under either the direct or indirect methods. Atanus, 2008 WL 696908, at *5. Smith does not attempt to offer

evidence under the direct method on his age discrimination claim and must therefore proceed under the indirect, burden-shifting method of McDonnell-Douglas.

Under the indirect method of proof, Smith may create a presumption of discrimination by establishing a prima facie case. Atanus, 2008 WL 696908, at *6. Assuming that he establishes a prima facie case, the burden then shifts to the defendant to show a legitimate, nondiscriminatory reason for its decisions. Id.; Brill v. Lante Corp., 119 F.3d 1266, 1270 (7th Cir. 1997). If the defendant provides such a reason and rebuts Plaintiff's prima facie case, the burden then shifts back to Smith to show that defendant's reasons are false and only a pretext for discrimination. Id.; Bahl v. Royan Indem. Co., 115 F.3d 1283, 1290 (7th Cir. 1997).

To make a prima facie showing in this age discrimination case, Smith must proffer evidence showing that: (1) he belongs to a protected class ; (2) he was performing his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably. Atanus, 2008 WL 696908, at *6; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000); Hague v. Thompson Distribution Company, 436 F.3d 816, 821 (7th Cir. 2006). There is no dispute that Smith is a member of a protected class in that he was over the age of 40 at all relevant times. 29 U.S.C. § 631(a).

Defendants argue that Smith cannot satisfy the second prong of the prima facie case because he was not adequately performing his job. In support of this argument, they point to Smith's admission that he had four accidents within a four month period from March 2003 to July 2003 and assert that the practice at the facility was for a driver to be subject to termination after four chargeable accidents within a nine month period. Smith responds

that Defendants' policies and practices shifted depending on the age of the driver and that although he did have the accidents identified, they did not justify the discipline imposed against him as he was treated less favorably than younger drivers who committed the same or worse offenses.

Normally, a court must first determine whether a plaintiff has made out a prima facie case before subjecting the employer to the pretext inquiry. However, where the plaintiff argues that he was performing satisfactorily, was singled out for discipline based on his age, and that the employer is lying about its business expectations or asserting phony requirements for the job, "it makes little sense . . . to discuss whether [he] was meeting [his] employer's reasonable expectations." Curry v. Menard, 270 F.3d 473, 477-78 (7th Cir. 2001). Under these circumstances, "the second prong and the pretext question seemingly merge because the issue is the same – whether the employer is lying." Hague, 436 F.3d at 823; Peirick v. Indiana University – Purdue University Indianapolis Athletics Dept., 510 F.3d 681, 687 (7th Cir. 2007). Accordingly, Smith does not have to show that he was meeting Defendants' legitimate expectations to establish his prima facie case, and any argument to this effect would be considered in the analysis of pretext.

Defendants further contend that Smith cannot show that similarly situated younger employees were treated more favorably. Under the ADEA, he must show that the alleged comparable employees were "substantially younger." Bennington v. Caterpillar, Inc., 275 F.3d 654, 659 (7th Cir. 2001). In the Seventh Circuit, an age disparity of ten years or more is required to make a presumptive showing. Id.; Bennington v. Caterpillar Incorporated, 275 F.3d 654, 659 (7th Cir. 2001). Where the disparity is less than ten years, "the plaintiff may still present a triable claim if [he] directs the court to evidence that [his] employer

considered [his] age to be significant." Id.   Smith has identified the following drivers, all of whom are more than ten years younger: Richard Bacon, John Bailey, Jeffery Chapai ("Chapai"), Owen Harris, Chris Robinson, DeMarco Scroggins, and Mike Wilson ("Wilson").

"[I]n disciplinary cases – in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason – a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct."  Peirick, 510 F.3d at 688; Radue, 219 F.3d at 617, *citing* Byrd v. Ronayne, 61 F.3d 1026, 1032 (1st Cir. 1995).  This normally will involve a demonstration that the employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  Radue, 219 F.3d at 617-18.

Here, Smith contends that Chapai and Wilson are substantially younger drivers who had four or more chargeable accidents within a nine-month period but were not placed on a last chance agreement or terminated.  In the course of a five month period in 2001, Chapai hit a parked car (4/9/01), tree (7/19/01), fence (8/23/01), and guardrail (9/20/01) but was not disciplined.  Wilson had eight accidents in a seven month period, hitting a fence (3/24/01 and 6/5/01), running over a lawn (5/14/01), hitting a pole (5/16/01), hitting a pipe (6/15/01), hitting a guardrail (6/15/01), running over a stop sign (7/11/01), and hitting a garage (8/31/01).

In making his argument, Smith misses the import of the Court's determination that it is only the May 2004 accident in which Smith damaged a sign on a customer's property and his resultant termination that are actionable as a result of the statute of limitations

applicable to his ADEA claim. As his four accidents in a nine month period and last chance agreement occurred more than 300 days before he filed his charge of discrimination, they are not timely, actionable employment actions and cannot form the basis for liability. Accordingly, to be similarly situated to Smith, the other employees must have been terminated for having an accident after having been placed on a last chance agreement. Smith has not identified any younger driver who was not terminated for having an accident while on a last chance agreement and has therefore failed to establish the fourth element of his prima facie case. No reasonable jury could find in his favor, and Defendants are therefore entitled to summary judgment on his ADEA claim without need for a discussion of a legitimate, non-discriminatory reason for the decision or pretext.[2]

## CONCLUSION

For the foregoing reasons, Waste Management's Motion for Summary Judgment [#36] is GRANTED IN PART and DENIED IN PART. This matter remains set for final pretrial conference on Friday, May 23, 2008, at 10:45 a.m. in person in Peoria.

ENTERED this 15th day of May, 2008.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

---

[2] Parenthetically, the Court notes that the same result would likely have followed had the issue of pretext been considered. Unlike his race claim, Smith has produced no evidence of a corporate culture acting on the basis of age, and Defendants have introduced evidence of older drivers who were treated more favorably than Smith, as well as younger drivers who were treated less favorably than Smith.